# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| IRON HORSE TRANSPORT, LLC dba DPF ALTERNATIVES OF ROANOKE, | § § § § | |
| Plaintiff, | § | |
| v. | § § | Case No. 7:23-cv-00791 |
| DET DIESEL EMISSION TECHNOLOGIES, LLC and SYNERGY CATALYST, LLC, | § § § § § | |
| Defendants. | § § | |

## DEFENDANTS' RENEWED MOTION TO DISMISS OR TRANSFER VENUE

Defendants DET Diesel Emission Technologies, LLC ("DET") and Synergy Catalyst, LLC ("Synergy") file this Renewed Motion to Dismiss or Transfer Venue, requesting that the Court dismiss Plaintiff Iron Horse Transport, LLC dba DPF Alternatives of Roanoke's ("Iron Horse") Amended Complaint (Dkt. 50) or transfer this matter to the Dallas Division of the United States District Court for the Northern District of Texas under 28 U.S.C. § 1404(a).

## Summary

It is clear and undisputed that Iron Horse and DET entered into a valid written contract containing a forum selection clause mandating litigation relating to that contract in the state or federal courts of Dallas County, Texas. In essence, Iron Horse's only claimed basis to avoid enforcement of that clause is that a transfer to the parties' agreed-upon forum would violate the public policy of Virginia because it recently added a claim under the Virginia Retail Franchising Act. This argument must fail. Nothing in that statute mandates that such claims be maintained in a Virginia court or evinces a public policy that transfer to a Texas federal court that is perfectly capable of applying Virginia law would violate. Indeed, it is doubtful that this statute is even applicable to the parties' relationship. Iron Horse cannot meet its heavy burden to show the

1

extraordinary circumstances necessary to avoid enforcement of the forum selection clause. This case should be transferred to the Dallas Division of the Northern District of Texas.

**Factual and Procedural Background**

Iron Horse is a business based in Vinton, Virginia. (Dkt. 50 at 2, ¶ 6). It was founded in July of 2012. (Iron Horse Articles of Incorporation, Ex. B). Generally, it performs services in the diesel industry. (Dkt. 50 at 4, ¶ 20). On June 18, 2019, Iron Horse filed a Certificate of Assumed or Fictitious Name with the Virginia State Corporation Commission, notifying the state that it was assuming the fictitious name of "DPF Alternatives of Roanoke". (Iron Horse Certificate of Assumed or Fictitious Name, Ex. C). "DPF Alternatives" is a trade name of a Colorado-based company called DPF Alternatives, LLC ("DPF Alternatives"). (*See* Dkt. 50 at 1-2, ¶ 2). As Iron Horse admits in its Amended Complaint, it is one of a number of "franchisees of DPF Alternatives, LLC". (Dkt. 50 at 1-2, ¶ 2). DPF Alternatives is listed as an "Unregistered" franchisor by the Virginia State Corporation Commission. (VSCC Franchisor Identification Page, Ex. D).

DET and its related entity, Synergy, are based in Coppell, Dallas County, Texas. (Dkt. 50 at 2, ¶¶ 7-8). DET is the owner and developer of intellectual property, processes, products, and equipment relating to the removal, replacement, and/or maintenance to be performed on emission control cores within emission assemblies in diesel engines. (*See generally* Master Services Agreement, Ex. A, at 1). DET licenses its technology to entities throughout the United States through written contracts, and in 2022, Iron Horse and DET signed a Master Services Agreement ("MSA"), by which DET licensed certain intellectual property, processes, and technology relating to diesel emission engine components and cores to Iron Horse. (*See* MSA, Ex. A). The MSA makes no reference to or of a franchise, and instead is entirely focused on terms to provide equipment, training, and other technical and business-related details to utilize the DET intellectual property as a licensee of this "Recore" technology. (*See generally* Ex. A). Iron Horse is charged no annual fee

2

under the MSA until the end of a five-year "Initial Term". (Ex. A at 1, ¶¶ 1-2). Paragraph 27 of the MSA reads as follows:

> 27. <u>Governing Law; Venue</u>. This Agreement shall be construed and enforced in accordance with and governed by the laws of the State of Texas, without regard to its conflicts of laws principles. Exclusive venue for any proceeding relating to this Agreement shall lie with the state and federal courts located in Dallas County, Texas.

(Ex. A at 9, ¶ 27).

Ultimately, Iron Horse filed suit against DET and Synergy in December of 2023, bringing various federal statutory claims as well as claims for breach of contract and other common law claims under the MSA. (*See* Dkt. 1 at 11-17). Despite the forum selection clause included in Paragraph 27 of the MSA, Iron Horse brought this action in the Western District of Virginia. (Dkt. 1). On January 24, 2024, Defendants filed a Motion to Dismiss or Transfer Venue under 28 U.S.C. § 1404(a), asking the Court to dismiss this matter of transfer it pursuant to the parties' contractually agreed-upon forum of the Dallas Division of the Northern District of Texas. (Dkt. 14). Iron Horse opposed the motion, raising several arguments in an attempt to overcome the forum selection clause, including that the Virginia Retail Franchising Act ("VRFA") evinced a public policy that would be violated by transferring the case to Texas. (*See* Dkt. 22). In their Reply, Defendants pointed out to the Court that Iron Horse had not brought a claim under the VRFA. (*See* Dkt. 24).

These proceedings were in a holding pattern for several months, as Iron Horse's counsel, who also represents DPF Alternatives and several other DPF Alternatives franchisees, attempted to invoke the procedures of the Judicial Panel on Multidistrict Litigation ("JPML") under 28 U.S.C. § 1407 and centralize this and four other cases in the District of Colorado, where DPF Alternatives had filed its own lawsuit against Defendants in October of 2023. *See DPF Alternatives, LLC v. DET Diesel Emission Technologies, LLC*, No. 23-cv-02860-SKC-NRN (D.

Colo.).[1] The JPML rejected Iron Horse and its fellow claimants' request, finding relief under 28 U.S.C. § 1407 to be inappropriate in light of the fact that the group of cases "are, at bottom, fairly straight-forward contract and misrepresentation actions", and recognized that decisions to enforce the forum selection clause in the MSA in this case and other related cases "may reduce the number of involved districts." *In re Recore Antitrust Litig.*, --- F. Supp. 3d ---, 2024 WL 1596924, at *1-*2 (J.P.M.L. Apr. 11, 2024). Since that time, the forum selection clause in the MSA has been enforced to transfer one of these five cases to the Dallas Division of the Northern District of Texas. (*See* Order in *RTR DPT, LLC v. DET Diesel Emission Technologies, LLC, et al.*, Case No. 3:24-cv-01371-P (formerly 4:24-cv-00030-P) (N.D. Tex.), Dkt. 45)). Requests seeking the same relief are pending or forthcoming in the remaining actions. *See In re Recore*, 2024 WL 1596924, at *2.[2]

Defendants' original motion was set for hearing on May 23, 2024. (*See* Dkt. 42). On May 22, 2024, Iron Horse moved to continue the hearing and requested leave to amend its pleadings to add a claim under the VRFA. (*See* Dkts. 44, 46). The Court declined to continue the hearing, and ultimately permitted Iron Horse leave to amend and instructed Defendants to address the impact of the addition of the VRFA claim in a renewed motion to dismiss or transfer the Amended Complaint. (*See* Dkt. 48, 49). Iron Horse filed its Amended Complaint on May 30, 2024, formally adding a claim for relief under Sections 13.1-564 and 13.1-571(a) of the VRFA. (Dkt. 50 at 21, ¶¶ 161-169).

By way of this Renewed Motion, Defendants respectfully submit that Iron Horse's pleading of a claim under the VRFA cannot establish the extraordinary circumstances necessary to

---

[1] The Court may take judicial notice of the docket entries and relevant materials filed in this related case, as well as others referenced in this Motion. *See U.S. Fidelity & Guaranty Co. v. Lawrenson*, 334 F.2d 464, 467 (4th Cir. 1964).
[2] The other two related actions are *JGD Filters, LLC v. DET Diesel Emission Technologies, LLC, et al.*, No. 4:24-00061 (S.D. Tex.), and *DPF Alternatives of Texas, LLC v. DET Diesel Emission Technologies, LLC, at al.*, No. 1:24-cv-00288-DII (W.D. Tex.).

overcome the parties' agreement to litigate this case in the state or federal courts of Dallas County, Texas. Defendants thus request that this case be transferred to the Dallas Division of the Northern District of Texas.

**Arguments and Authorities**

The Court has already been fully briefed on the relevant standards under 28 U.S.C. § 1404(a) and various other arguments raised by Iron Horse relating to the scope of the forum selection clause and whether it covers all claims at issue in this case, the presence of Synergy as a defendant, and the irrelevance of the private interest factors under the Supreme Court's decision in *Atlantic Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49 (2013). (*See* Dkts. 14, 22, 24). Consistent with the Court's instructions during the hearing of May 23, 2024, Defendants shall not address those issues again in this filing and respectfully refer the Court to that briefing and, to the extent necessary, incorporate it herein. (*See* Dkts. 14, 24). The focus of this brief shall be limited to the impact of the added content of Iron Horse's Amended Complaint, namely the inclusion of a claim under the VRFA. (*See* Dkt. 50 at 21, ¶¶ 161-169).

Based on the prior briefing of the parties and arguments of counsel at the hearing, certain matters are undisputed. *Factually*, it is undisputed that Iron Horse entered into the MSA with DET, its claims in this matter relate to the MSA, and the MSA contains a mandatory forum selection clause that, if enforced, mandates this case be litigated in the "state or federal courts located in Dallas County, Texas." (*See* Ex. A at 9, ¶ 27; Dkt. 50 at 8, ¶ 50). *Legally*, it is undisputed that Iron Horse raises only one of the four potential bases to oppose enforcement of the forum selection clause, namely that litigating in Texas would violate the public policy of Virginia due to Iron Horse's recent amendment of its pleadings to assert a claim under the VRFA. (*See generally* Dkt. 22; Dkt. 50 at 21, ¶¶ 161-169). But as discussed below, the fact that Iron Horse has asserted this claim cannot meet its heavy burden to present this Court with sufficient grounds to decline to

5

enforce a mandatory, binding, and valid forum selection clause. This case should be transferred to the Dallas Division of the Northern District of Texas.

**I.        Enforcing the forum selection clause would not violate Virginia public policy because the VRFA does not mandate that claims under that statute be brought in Virginia.**

Iron Horse's main argument against enforcement of the forum selection clause is that the VRFA represents a strong Virginia public policy regarding the regulation of franchises that enforcement of the forum selection clause would violate. In essence, Iron Horse contends that a lawsuit including a claim under the VRFA should remain in Virginia regardless of an agreement that requires it to be litigated elsewhere. But a review of the VRFA shows that the statute contains no requirement that such claims be litigated in Virginia, nor evinces any public policy that can overcome the parties' agreement.

There is no doubt that Virginia has explained its policy in enacting the VRFA through an explicit statement in Virginia Code § 13.1-558, which states:

> It is hereby declared to be the policy of the Commonwealth, through the exercise by the General Assembly of its power to regulate commerce partly or wholly within the Commonwealth of Virginia, to correct as rapidly as practicable such inequities as may exist in the franchise system so as to establish a more even balance of power between franchisors and franchisees; to require franchisors to deal fairly with their franchisees with reference to all aspects of the franchise relationship and to provide franchisees more direct, simple, and complete judicial relief against franchisors who fail to deal in a lawful manner with them.

Va. Code § 13.1-558. It is thus abundantly clear that Virginia wishes to provide wronged franchisees with a civil remedy through the judicial system. However, as the Court astutely observed at the May 23 hearing, and as Iron Horse's counsel could not dispute, Section 13.1-558 ***does not mandate that such a remedy be litigated in or granted by a Virginia court***. Rather, the statute states only that its purpose is to provide franchisees with an avenue to "direct, simple, and complete judicial relief against franchisors". *Id.* Had the legislature expressed a public policy that such "judicial relief" be the exclusive province of the courts of Virginia, it would have included

language to that effect, such as adding the words "in this Commonwealth" or "in the courts of this State" after "judicial relief". It did not. To accept Iron Horse's contention that this statute requires the Court to disregard the indisputably valid forum selection clause in the MSA would read such language into the statute that does not exist—something that this Court is barred from doing under bedrock principles of statutory interpretation. The Court "may not construe the statute's plain language in a manner that amounts to holding that the General Assembly meant to add a requirement to the statute that it did not actually express." *Vaughn, Inc. v. Beck*, 554 S.E.2d 88, 91 (Va. 2001). On the contrary, "[a] court may not 'add to the words' of a statute." *Berglund Chevrolet, Inc. v. Virginia Dep't of Motor Vehicles*, 840 S.E.2d 19, 22 (Va. App. 2020) (quoting *Baker v. Commonwealth*, 685 S.E.2d 661, 663 (Va. 2009)). Accepting Iron Horse's argument would have the Court do exactly that.[3]

Indeed, there is ample case law showing that courts outside of Virginia are perfectly capable of adjudicating claims under the VRFA. For example, in *ServiceMaster of Fairfax, Inc. v. ServiceMaster Residential/Commercial Services, L.P.*, No. 16-02589, 2017 WL 3023342 (D. Md. July 17, 2017), a plaintiff sued on an agreement with the defendant that included a mandatory forum selection clause mandating litigation in Tennessee. *Id.* at *1. The plaintiff brought suit in Maryland, and included claims under the franchise laws of both Virginia and Maryland. *Id.* at *1, *6. The defendant moved to transfer to Tennessee under the forum selection clause, and the district court granted the motion, rejecting the plaintiff's argument that a Maryland court was a more appropriate forum for a case involving Maryland franchise law. *Id.* at *6. Ultimately,

---

[3] In addition, because the VRFA includes criminal sanctions and is a trade regulation statute in derogation of the common law, the Supreme Court of Virginia has held that it "must be construed strictly." *Crone v. Richmond Newspapers, Inc.*, 384 S.E.2d 77, 80 (Va. 1989). Reading a requirement into the statute that would require VRFA civil claims to be litigated in Virginia courts and obviate contractual provisions to the contrary would certainly not constitute a strict construction of the statute.

7

*ServiceMaster* shows (1) that VRFA claims are not exclusive to Virginia courts and courts in other jurisdictions are perfectly capable of adjudicating them, and (2) a mandatory forum selection clause cannot be disregarded merely by the fact that the plaintiff has brought claims under the potentially applicable statutory law of their chosen forum. Both principles are applicable here, and both support enforcement of the parties' forum selection clause.

Indeed, federal courts throughout the country have considered and adjudged claims under the VRFA with no issue or impediment. *See Burger King Corp. v. Lee*, No. 06-20645-CIV, 2006 WL 8433548, at *3 (S.D. Fla. Aug. 11, 2006) (ruling on merits of claim under VRFA); *Sherman v. Ben & Jerry's Franchising, Inc.*, No. 1:08-CV-207, 2009 WL 2462539, at *8-*9 (D. Vt. Aug. 10, 2009) (same); *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 673 F. Supp. 1493, 1501-04 (C.D. Cal. 1987) (same). This case can and should be no different. Assuming Iron Horse has a viable VRFA claim against DET, there is no reason at all why it cannot be litigated and adjudicated by a Texas federal court. *Cf. The Hipage Co., Inc. v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 613 (E.D. Va. 2008) (holding that an out-of-state federal court is "competent to apply Virginia law").

Moreover, at least one other provision of the VRFA shows that the General Assembly did not intend to limit adjudication of claims under the VRFA to Virginia state or federal courts. Virginia Code Section 13.1-571, governing "Civil Remedies" under the VRFA, includes the following subsection:

> (c) Any condition, stipulation or provision binding any person to waive compliance with any provision of this chapter or of any rule or order thereunder shall be void; provided, however, that nothing contained herein shall bar the right of a franchisor and franchisee to agree to binding arbitration of disputes consistent with the provisions of this chapter.

Va. Code § 13.1-571(c). If the VRFA included a public policy that mandated claims under the statute to be litigated in Virginia courts, it certainly would not have included this provision, which

explicitly recognizes the right of the parties to contract for an alternative method of adjudication. *Id.* Nor does this provision require permissible contractual arbitration—or civil litigation, for that matter—to take place in Virginia. *Id.* On the contrary, arbitration of a VRFA claim can take place in any venue consistent with the parties' agreement. So too can litigation of a VRFA claim, and the mandatory venue for litigating Iron Horse's claims relating to the MSA is the Dallas Division of the Northern District of Texas.

The Supreme Court's relevant dictates as to forum selection clauses are clear. The clause "should control absent a strong showing that it should be set aside." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). And only "unusual cases" involving "extraordinary circumstances" can justify overriding such a clause. *Atlantic Marine*, 571 U.S. at 62, 64. Far from depriving it of a remedy, transfer would not only provide Iron Horse with a perfectly suitable forum to litigate its claims, but actively serve the public policy of Virginia, which favors the enforcement of forum selection clauses. *See Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.*, 397 S.E.2d 804, 808 (Va. 1990) ("The plaintiff has pointed to no Virginia case or statute which suggests that Virginia policy rejects forum selection clauses, and we have found none. Indeed, today we have expressly sustained the validity of such provisions, approved their use, and enforced them."). This Motion should be granted, and this case should be transferred to the Dallas Division of the Northern District of Texas.

**II.     Even if there were a Virginia public policy that transfer would violate—and there is not— any interest Virginia would have in maintaining this case in this venue is minimal because the VRFA may not apply at all.**

Iron Horse will doubtless emphasize the protections that Virginia law provides to franchisees and implore the Court to maintain this case in this venue so it can apply the VRFA in a court native to the legislature that enacted it. As noted above in Part I, such arguments cannot overcome the parties' agreement or present its enforcement as to the mandatory venue for this

9

litigation, and a Texas federal court is perfectly capable of applying Virginia law to this issue. *See The Hipage Co.*, 589 F. Supp. 2d at 613. But even if the Court were to consider the substantive protections, rights, and public policy underlying the VRFA in its considerations, they deserve little, if any, weight, because they are unlikely to be relevant at all.

As an initial matter, whether Virginia law will even apply to this claim has not been decided at this stage, nor need it be. This venue-related Motion is not the appropriate avenue to rule on the merits of Iron Horse's claim under the VRFA, but whether Virginia law will apply at all is doubtful. Paragraph 27 of the MSA includes a choice of law clause that reads: "This Agreement shall be construed and enforced in accordance with and governed by the laws of the State of Texas, without regard to its conflicts of laws principles." (Ex. A at 9, ¶ 27). This is a valid and enforceable choice of law clause that dictates that the law of Texas—not Virginia—governs the parties' relationship.[4] While case law on this issue as to the VRFA specifically is somewhat scarce, at least one court has held that when a franchise agreement includes a choice of law clause mandating the application of the law of a state other than Virginia, the VRFA does not apply, and civil claims under the VRFA fail as a matter of law. *See Lee*, 2006 WL 8433548, at *3 (dismissing counterclaim based on VRFA based on enforceable choice of law provision in franchise agreement designating law of different state). The fact that Virginia law may not apply at all to Iron Horse's relationship with DET would obviate or diminish any interest Virginia would have in maintaining this case in this venue.

But even if Virginia law did apply to Iron Horse's relationship with DET and Iron Horse could bring a claim under the VRFA, it does not appear that this statute would apply at all for multiple reasons. First and foremost, the relationship between DET and Iron Horse is not a

---

[4] Texas has enacted a Business and Organizations Code and various statutory provisions that regulate the conduct of business, but it has not enacted a specific statute governing franchise relationships in the way Virginia has.

"franchise" under the definition of the statute. To qualify as a "franchise" for purposes of the VRFA, Virginia Code Section 13-559(A) requires the relationship to meet specific criteria:

> "Franchise" means a written contract or agreement between two or more persons, by which:
>
> 1. A franchisee is granted the right to engage in the business of offering, selling or distributing goods or services at retail under a marketing plan or system prescribed in substantial part by a franchisor;
>
> 2. The operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising or other commercial symbol designating the franchisor or its affiliate; and
>
> 3. The franchisee is required to pay, directly or indirectly, a franchise fee of $500 or more.

Va. Code § 13.1-559(A). The relationship between DET and Iron Horse does not meet either the second or the third element of this definition.

As to the second element, while the MSA grants Iron Horse a <u>license</u> to use DET's Recore system and technology,[5] Iron Horse is not operating under the "Recore" trade name; rather, it offers the "Recore" product or service as part of Iron Horse's larger business. For Iron Horse to be a "franchise" of DET, under the second element, the entire "operation of [Iron Horse's] business" must be "substantially associated" with the DET or Recore trademark. *Id.* But Iron Horse has been in operation in Virginia since **2012, <u>ten years before</u> it entered into the MSA with DET**. (Ex. B). Thus, by the time Iron Horse agreed to use DET's technology a decade later, it already had an ongoing business operation without that product or service at all. (*See* Ex. B; Ex. A). DET's Recore services were simply integrated into it. The second element thus cannot be met.

Nor can Iron Horse establish the third element; nothing in the MSA requires Iron Horse to

---

[5] The VRFA applies specifically to franchisors and franchisees. There is no reference in the VRFA to *licensing* of technology or products. Va. Code § 13.1-557 *et seq.*

pay a franchise fee to DET of $500 or more. Indeed, under the terms of the MSA, fees for the use of DET's technology are not even owed by Iron Horse until after the "Initial Term" of five years expires. (Ex. A at 1-2, ¶¶ 1-2). This relationship was barely a year old at the time this suit was filed. (*See* Dkt. 1; Dkt. 50 at 8, ¶ 50). Without a franchise fee, the third element also cannot be met.

Additionally, the VRFA includes a specific exclusionary provision that takes the DET-Iron Horse relationship outside of the ambit of the statute. Subpart B of Virginia Code Section 13.1-559 states in relevant part:

> A franchise does not include a contract or agreement by which a retailer of goods or services is granted the right either (i) <u>to utilize a marketing plan or system to promote the sale or distribution of goods or services *which are incidental and ancillary to the principal business of the retailer (sales under such a plan or system accounting for less than 20 percent of the retailer's gross sales being deemed incidental and ancillary)*</u>; or (ii) to sell goods or services within, or appurtenant to, a retail business establishment as a department or division thereof provided such retailer is not required to purchase such goods or services from the operator of such establishment.

Va. Code § 13.1-559(B) (emphasis added). Thus, if a business arrangement with a retailer simply provides for the distribution of goods and services that are "incidental and ancillary to the principal business of the retailer" such that the account for "less than 20 percent of the retailer's gross sales", then that relationship is not a "franchise" under the VRFA as a matter of law. *Id.*

Here, Iron Horse has neither pled, nor can it establish, facts showing that the DET-Iron Horse relationship is a "franchise" because it falls within this exception. Iron Horse had been operating for ten years at the time it entered into the MSA with DET that allowed it to offer another type of service. (Ex. A; Ex. B). While the merits of whether DET and Iron Horse's business relationship was a "franchise" is a question that is not yet ripe for a substantive decision, it seems implausible that, in the brief period that DET and Iron Horse had a business relationship, DET's Recore technology could account for anything close to "20 percent of [Iron Horse's] gross sales"

that would allow it to be considered a "franchise" of DET at all. Va. Code § 13.1-559(B).

In fact, if there is any franchise relationship relevant to this case, it is not between Iron Horse and DET—it is between Iron Horse and DPF Alternatives. The VRFA requires that a franchisor be registered with Virginia State Corporation Commission. Va. Code § 13.1-560. While DET is not registered under this statute—and as a mere licensee need not be—it is actually **DPF Alternatives** that is listed as a "franchisor" on the website of the Virginia State Corporation Commission:



Figure 1 – Screenshot from Virginia State Corporation Commission Website (Ex. D)

This makes perfect sense, as Iron Horse admits in its pleadings that it is a franchisee of DPF Alternatives, and has done business under the name "DPF Alternatives of Roanoke" and thus operates its business under the DPF Alternatives moniker since 2019. (Dkt. 50 at 4, ¶ 20; Ex. C). As noted above, the second element of a "franchise" under the VRFA is that the franchisee operates its business under "the franchisor's trademark, service mark, trade name, logotype, advertising or other commercial symbol designating the franchisor". Va. Code § 13.1-559(A). Iron Horse is

certainly holding itself out as a franchisee—but of DPF Alternatives, not DET.[6]

In the context of this Motion, the Court need not even reach the question of whether the VRFA applies to the Iron Horse-DET relationship, let alone whether that relationship meets the definition of a "franchise". But a review of the record at this early stage shows that it is unlikely that the VRFA will apply to this matter at all, diminishing what public policy interest Virginia may have in maintaining this action in this venue despite the requirement of the parties' written contract to litigate this matter elsewhere. This case does not present the kind of "extraordinary circumstances" that are necessary to disregard the parties' agreement to litigate this case in the agreed-upon forum. *Atlantic Marine*, 571 U.S. at 62. This Motion should be granted, and this case should be transferred to the Dallas Division of the Northern District of Texas.

## Conclusion and Prayer

WHEREFORE, Defendants respectfully request that this Motion be granted, and that this case be transferred to the Dallas Division of the Northern District of Texas under 28 U.S.C. § 1404(a).

Dated: June 12, 2024.

Respectfully submitted,

*/s/ Ross Cunningham*
H. David Gibson (VSB No. 40641)
Powell M. Leitch, III (VSB No. 27420)
**GENTRY LOCKE**
10 Franklin Road, SE, Suite 900
Roanoke, Virginia 24011
Telephone: (540) 983-9300
gibson@gentrylocke.com
leitch@gentrylocke.com

---

[6] Interestingly, the record shows that Iron Horse's actual franchisor, DPF Alternatives, is actively in violation of the VRFA. While DET strongly disputes that it violated the VRFA or that the VRFA even applies to its relationship with Iron Horse, the Virginia State Corporation Commission's records denote that DPF Alternatives is "unregistered" in violation of Section 13.1-560 of the VRFA. (Ex. D).

Ross Cunningham (*pro hac vice*)
Alex J. Whitman (*pro hac vice*)
**CUNNINGHAM SWAIM, LLP**
4015 Main Street, Suite 200
Dallas, Texas 75226
Phone: 214-646-1495
Facsimile: 214-613-1163
rcunningham@cunninghamswaim.com
awhitman@cunninghamswaim.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

The undersigned certifies that this document has been served on all counsel of record who have consented to service as required by local rule via the Court's CM/ECF system on this 12th day of June, 2024.

*/s/ Ross Cunningham*
Ross Cunningham